**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JEFFREY PAYNE,            ) | |
|     Plaintiff,          ) | |
|               ) | |
|     v.               ) | CAUSE NO.: 2:05-CV-233-PRC |
|               ) | |
| JO ANNE B. BARNHART,    ) | |
| Commissioner of the Social Security   ) | |
| Administration,          ) | |
|     Defendant.       ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by the Plaintiff, Jeffrey Payne,

on June 10, 2005, on Plaintiff's Opening Brief [DE 19], filed by Payne on December 14, 2005, and

on a Supplemental Opening Brief [DE 30], filed by Payne on November 3, 2006. Payne seeks

judicial review of a final decision of the Defendant, the Commissioner of the Social Security

Administration, in which Payne was denied Disability Insurance Benefits ("DIB") under Sections

216(1) and 223 of the Social Security Act. For the following reasons, the Court grants Payne's

request to reverse and remand the decision of the Commissioner.

**PROCEDURAL BACKGROUND**

On May 6, 2003, Payne filed an application for disability insurance benefits under Title II

of the Social Security Act, alleging an inability to work since September 14, 2002, due to pain and

knee problems. The application was denied initially on June 16, 2003. Payne then filed a timely

request for a hearing before an Administrative Law Judge ("ALJ") on November 18, 2003. The

hearing before ALJ William J. Wilkin was conducted on December 19, 2004, in Gary, Indiana. At

the hearing, testimony was heard from Vocational Expert ("VE") Leonard Fisher and from the claimant who was represented by counsel.

On March 11, 2005, the ALJ issued a decision denying benefits, finding that although Payne had severe impairments, he nevertheless was not disabled because he retained the residual functional capacity ("RFC") to do a narrow range of sedentary work and remained capable of performing other jobs in the economy. The ALJ considered Jones' age, education, past work experience, RFC, and the testimony of the VE in making the following findings:

(1)     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

(2)     The claimant has not engaged in substantial gainful activity since the alleged onset date.

(3)     The claimant has an impairment, i.e., status post left knee injury with residuals, which is considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

(4)     This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(5)     The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

(6)     I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

(7)     The claimant has the following residual functional capacity: he can lift, push and pull no more than 15 pounds at a time, and cannot stand or walk as a part of his job duties. In addition, he can only work in a seated position, and cannot squat or climb.

(8)     The claimant is unable to perform his past relevant work (20 CFR §§ 404.1565 and 416.965).

(9)     The claimant is "a younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

(10)    The claimant has a "high school education" (20 CFR §§ 404.1564 and 416.964).

(11)    The claimant has no transferable skills (20 CFR §§ 404.1568 and 416.968).

(12)    The claimant has the residual functional capacity to perform less than a full range of sedentary work.

(13)    Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as a taper (800 Regional jobs), an order clerk (2,000 regional jobs), a document preparer (800 regional jobs), a surveillance systems monitor (2,000 regional jobs) and a telephone solicitor (19,000 regional jobs).

(14)    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

R. at 18-19.

Payne filed a timely Request for Review of Hearing Decision with the Appeals Council, which was denied on November 12, 2004.  Therefore, the ALJ's decision of March 11, 2005, is the final decision of the Commissioner.

A Complaint was timely filed by Payne with this Court on June 10, 2005, and on December 13, 2005, Payne filed a Plaintiff's Opening Brief.  On February 27, 2006, the Commissioner filed a Defendant's Memorandum in Support of Commissioner's Decision.  Jones then filed a Reply Brief on April 12, 2006.

On September 27, 2006, the Court issued an Opinion and Order denying the relief requested by Payne and reaffirming the decision of the ALJ in all respects.  On September 28, 2006, a Clerk's Entry of Judgment was entered on the docket.

On October 18, 2006, the Court *sua sponte* issued an Order pursuant to Federal Rule of Civil Procedure 60(b) vacating its September 27, 2006 Opinion and Order and the September 28, 2006 Entry of Judgement and reopening this matter for reconsideration of the limited issue raised by Payne in Argument II of his Opening Brief and addressed by the Court in Part B.1 of the Analysis in the Court's Order. The Court set a briefing schedule for the parties to brief the Court on the impact of the Seventh Circuit's holding in *Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006), on Payne's arguments raised in Argument II of his Brief and on this Court's ruling in Part B.1 of the Analysis in its Order and whether *Prochaska* requires this Court to enter judgment in favor of Payne. The supplemental briefing is now complete.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636 and 42 U.S.C. § 405(g).

# FACTS[1]

## A. Vocational Background

Payne was forty-two years old on the date of the ALJ's decision. He is a high school graduate and worked as a machine operator and auto mechanic/installer.

---

[1] The Court bases the facts on the statement set forth by the Commissioner as Payne did not provide a statement of facts in his opening brief and did not oppose in his reply brief the statement of facts as set forth by the Commissioner in her response brief.

**B. Plaintiff's Testimony and Other Evidence**

In May 2003, Payne reported to the Agency that he could not stand more than thirty minutes at a time and that his pain pill interfered with his thinking.  In an October 13, 2003 letter to Payne's attorney, vocational expert Christopher Young, M.A., stated that "[i]n the event that someone could not stand for any reason at any time in the work area, I believe [that] would preclude work as it would be found in the local, regional or national economy."  R. at 193.  At his administrative hearing, Payne stated that he was disabled because of left knee problems. He testified that pain medication did not help and that he could not walk at all without his cane.

**C. Medical Evidence**

On September 13, 2002, Payne sought emergency room treatment, stating that his clothing had caught in a machine at work.  Payne was diagnosed with abrasions and a left knee sprain.  He was given Tylenol, which he refused, and his left knee was wrapped in an Ace bandage.

At follow-up on September 16, 2002, Mohamed Turkmani, D.O., examined Payne, who complained of left knee, left thigh pain, and right elbow pain.  On examination, Dr. Turkmani noted that Payne had a scar on his left knee from a previous surgery.  He determined "[t]here is no limitation of range of motion," R. at 94, although there was some restriction with flexion due to thigh pain. He also noted no effusion, redness, or warmth of the left knee.  The right elbow was somewhat painful with range of motion testing, but there was no swelling or effusion.  Dr. Turkmani diagnosed left knee and right elbow strains.

A September 20, 2002 left knee magnetic resonance imaging (MRI) scan showed a ligament tear. On September 23, 2002, Michael Keer, D.O., examined Payne and diagnosed a sprained left knee along with bruises. He determined that Payne was "available for sitting duty." R. at 98.

On October 2, 2002, Joseph Hecht, M.D., initially examined Payne, who complained of left knee pain. Dr. Hecht had obtained the April 2000 operative note regarding Payne's left knee, which showed it was treatment only for a laceration. He reviewed a recent MRI scan, which indicated an abnormality, but Dr. Hecht suspected it was just residual sutures from the prior laceration. On examination, Payne had no left knee effusion or joint line tenderness. Dr. Hecht could not determine any etiology for Payne's complaints of weight bearing, and he suggested physical therapy.

On October 18, 2002, Dr. Hecht noted that Payne had not reported improvement with physical therapy, and he scheduled arthroscopy. He observed that Payne was unable to work. The arthroscopy revealed a ligament injury. Dr. Hecht advised Payne to stop using crutches and then to resume physical therapy. On November 18, 2002, Dr. Hecht noted that Payne was using only one crutch and was making progress. A November 2002 physical therapy note indicated that Payne had five physical therapy treatment sessions, but did not return for further physical therapy. On December 2, 2002, Dr. Hecht reported that Payne's physical therapist felt that Payne's subjective complaints were limiting his progress. Payne was starting to stop use of any crutches, and Dr. Hecht advised that he stay off work until he was more independent from his crutches.

On December 17, 2002, Dr. Hecht stated that Payne was not using any crutches, although he still had a stiff gait. Dr. Hecht advised Payne that he could perform "light duty work where it was seated only work."

On January 8, 2003, Dr. Hecht remarked that Payne's "pain seems to be out-of-proportion to what my operative findings were." R. at 135.  Payne was walking without any assistive device and had "virtually full range of motion" of his left knee.  *Id*.  On January 22, 2003, Payne was still complaining of pain, prompting Dr. Hecht to remark that Payne was unable to work.  Still, Dr. Hecht could not find any etiology for Payne's complaints and concluded that Payne should undergo an independent medical examination.  On February 2, 2003, Dr. Hecht noted that an x-ray showed a small osteophyte, but that did not correlate with Payne's complaints of pain.  Dr. Hecht remained puzzled by Payne's complaints. On March 3, 2003, Payne continued to complain, and Dr. Hecht stated that Payne could not work.  The following month, Dr. Hecht ordered a work evaluation report and fitted Payne with a knee brace.

The functional evaluation indicated that Payne could occasionally lift about fifty pounds and frequently lift about thirty pounds.  He could stand or walk for more than two-thirds of a workday, although he needed some extra time for walking.  He had no sitting restriction.  He could crawl, kneel, crouch, and balance.

On May 23, 2003, Dr. Hecht concluded that Payne could work with restrictions of no lifting more than twenty-five pounds; no pushing or pulling more than fifteen pounds; and no squatting, kneeling, or climbing activities.  The following month, Dr. Hecht remained puzzled by Payne's complaints and suggested another consultative examination.

On June 9, 2003, T. Crawford, M.D., reviewed the records for the State Agency and concluded that Payne could occasionally lift/carry twenty pounds; frequently lift/carry ten pounds; stand or walk for two hours in an eight-hour workday; and sit for six hours in an eight-hour workday.

Payne could occasionally perform postural activities, such as stooping, kneeling, crouching, and crawling.

On June 24, 2003, Dr. Hecht discussed that the consultative examiner had noted the possibility of malingering. Dr. Hecht stated that he had returned Payne to work in a seated position, but his employer was having him perform a moderate amount of walking. Nonetheless, Dr. Hecht noted that Payne's pain level seemed fairly low and that he should be functioning at a higher level than seated only work. Dr. Hecht took Payne off of work because of the amount of walking Payne's employer was requiring.

A July 2003 bone scan indicated arthritic knee changes.

On September 18, 2003, Dr. Hecht released Payne from his care as he felt that he had reached maximum medical improvement. Dr. Hecht concluded that Payne was not capable of "doing any prolonged standing work and his work status should be seated only work and this must be strictly enforced. I do not feel that he should be doing any standing or walking in the work setting as that does seem to exacerbate his symptoms." R. at 114. In October 2003, Dr. Hecht assessed Payne's impairment as fourteen percent.

In November 2003, R. Wenzler, M.D., reviewed the record and concurred with Dr. Crawford's earlier assessment that Payne could perform light work.

The medical record also contains reports from K. Kalluri, M.D., who saw Payne about seven times in 2003 and 2004 for general conditions, including headaches and attempts to stop smoking. In a written response to inquires by Payne's attorney, Dr. Kalluri stated that Payne had a major dysfunction of a joint, but stated "no comments" when asked if it was characterized by a gross

8

anatomical deformity.  R. at 213.  He added that Payne could not walk on uneven surfaces and could only walk thirty steps at a time with a cane.

On January 6, 2005, Michael Kennedy, M.D., examined Payne in connection with his disability claim.  Payne claimed that he primarily walked with crutches and used a cane for short distances.  On examination, Payne had marked tenderness to light left knee palpation.  He could flex his left knee to ninety degrees.  Dr. Kennedy concluded that Payne could work eight hours a day in a seated position, but could not use his left foot to operate controls and could not bend, squat, climb, or crawl, due to knee pain.

### D. Vocational Expert Testimony

At the hearing on October 1, 2003, the ALJ asked the vocational expert, Dr. Fisher, to assume a hypothetical individual with Payne's vocational profile who could perform sedentary work in a seated position but that the job should not require standing or walking.  In addition, the individual could not lift, push, or pull more than fifteen pounds and could not squat or climb.  Dr. Fisher testified that such an individual could not perform Payne's past work.  However, Dr. Fisher identified other unskilled sedentary jobs in the region, including taper (800 jobs); order clerk (2,000 jobs); document preparer (800 jobs); surveillance system monitor (2,000 to 3,000 jobs); touch up film inspector (600 jobs); and telephone solicitor (19,000 jobs).  If the individual had to elevate his leg thirty-six inches, he could still perform the 2,000 to 3,000 monitor jobs.  When questioned by Payne's attorney if the individual could not walk at all such that he could not even get to the job site, Dr. Fisher stated that he would not dispute that the individual had to get to the job site.  Dr. Fisher

also stated that he would not dispute Payne's attorney statement that there is a certain amount of walking in every job in that the individual has to get to the job.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 995 (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits.  20 C.F.R. § 404.1520(a)(4).  The steps are:

(1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2.

(2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3.

(3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4.

(4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5.

(5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(iv); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).  At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations."  *Young*, 362 F.3d at 1000.  The ALJ must assess the RFC based on all the relevant evidence of record.  *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)).  The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ.  *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

In his Brief, Payne argues that (1) the Appeals Council failed to include evidence and arguments in the record of the proceedings; (2) the ALJ erred in finding Payne could perform jobs that existed in significant numbers in the national economy where Payne could not stand or walk as part of his job duties; (3) the ALJ improperly found Payne's impairment did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 of the Social Security Regulations; (4) the ALJ improperly rejected the report of a treating physician and substituted his own judgment therefore; (5) the ALJ failed to consider the impact of an inability to stoop on Payne's ability to work and postulated an incomplete hypothetical question to the vocational expert; and (6) the ALJ erred in finding Payne to be only partially credible.  The Court will address each of Payne's arguments in turn.

**A.  Appeals Council**

Payne argues that the record of proceedings is missing evidence, specifically that the Appeals Council did not incorporate exhibit AC-1 as part of the record despite the Appeals Council's statement that the exhibit is included.  This exhibit is a report from vocational expert Christopher A. Young, dated February 27, 2005, which was submitted to the Appeals Council on April 21, 2005, along with a short argument, a motion to correct errors, and a report from Dr. Kennedy.  Payne's argument is that the failure to include the evidence in the record is a violation of the Social Security Administration's obligation to provide a complete transcript of the administrative record and that if the record is incomplete on a determinative fact, remand is appropriate.  Payne does not argue that

this exhibit is relevant to any fact nor that any such fact is determinative.  Notably, Payne does not provide a reply to the Commissioner's response to this argument.

In this instance, remand is not appropriate because the evidence in question was offered only to the Appeals Council and was not before the ALJ as part of the evidence considered for his decision.  Therefore, the Court cannot consider the evidence for purposes of determining whether substantial evidence supports the final decision of the Commissioner.  *See Eads v. Sec'y of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).[2]  Although the Court may remand a case for consideration of new and material evidence pursuant to sentence six of 42 U.S.C. § 405(g), Payne has neither requested nor established the requirements for such a remand.[3]  Accordingly, remand on this basis is denied.

## B.  Jobs in the National Economy

*1.  The Dictionary of Occupational Titles and the VE Testimony*

In his decision, the ALJ found that Payne could not "stand or walk as a part of his job duties," could only work in a seated position, could not squat or climb, and could not lift, push, or pull more than fifteen pounds.  As noted by the ALJ, this residual functional capacity of limited sedentary work

---

[2] "[C]ourts may not reverse an administrative law judge's decision on the basis of evidence first submitted to the Appeals Council . . . ."  *Eads*, 983 F.2d at 818.  This notion supports the policy that an ALJ "cannot be faulted for having failed to weigh evidence never presented to him."  *Id.* at 817.

[3] Sentence six of § 405(g) provides that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . . ."  42 U.S.C. § 405(g); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991); *Richmond v. Chater*, 94 F.3d 263, 268 (7th Cir. 1996).  The plaintiff bears the burden of demonstrating that remand is appropriate under sentence six.  *See Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993).  Evidence is new if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Sample v. Shalala*, 999 F.2d 1138, 1133 (7th Cir. 1993).  New evidence is material if there is a "reasonable probability" that the ALJ would have reached a different disposition if presented with the new evidence.  *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997); *Sample*, 999 F.2d at 1144.

finding corresponds with the conclusion of Payne's treating physician, Dr. Hecht. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (discussing the weight to be given to a treating source physician). The ALJ also noted that this RFC was generally consistent with the opinion from Dr. Kennedy, the consulting physician. At the hearing, the ALJ gave the VE, Dr. Fisher, a hypothetical of an individual limited to sedentary work with no standing or walking, seated only, no lifting, no pushing or pulling over 15 pounds, and no squatting or climbing. Based on the testimony of Dr. Fisher, the ALJ found that Payne could perform the jobs of taper, order clerk, document preparer, surveillance system monitor, and telephone solicitor.

Payne's second basis urging remand in the instant opening brief and supplemental opening brief is that, in spite of these findings, the ALJ nevertheless found Payne capable of performing jobs that require walking or standing. Payne sets forth three bases for this position: the VE's testimony is inconsistent with the Dictionary of Occupational Titles ("DOT"); Social Security Ruling 96-9p indicates that a restriction to only a few minutes of walking and standing during the work day would significantly erode the unskilled sedentary occupational base; and the opinion of his vocational expert, Christopher Young, that no work is available for a person who could not stand and walk in connection with his work, is consistent with the conclusion that no jobs exist for Payne.

First, Payne argues that the five jobs identified by the VE, as they appear by name in the DOT, require a certain amount of standing and walking based on being categorized as "sedentary" work. Each of these five job descriptions contains a requirement for "strength" of "sedentary work," which explains that "[s]edentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met." DOT 299.357-014 (telephone solicitor); DOT

209.567-014 (order clerk, food and beverage); DOT 249.587-018 (document preparer, microfilming); DOT 017.684-010 (taper, printed circuit layout); DOT 379.367-010 (surveillance-system monitor). As noted above, the ALJ found that Payne could not stand or walk as part of his job duties and, consistent with that finding, posed a hypothetical to the VE of an individual limited to, among other things, sedentary work with no standing or walking, seated only.  However, the jobs in the DOT with the same names as those testified to by the VE require a certain amount of standing or walking based on the definition of "sedentary work."  Accordingly, Payne asserts that there is an unresolved conflict between the DOT and the VE's testimony and that the burden of resolving this conflict rested with the ALJ at the hearing–a burden the ALJ failed to discharge when he did not ask the VE about inconsistencies with the DOT.

Pursuant to Social Security Ruling 00-4p, the ALJ has an affirmative duty to determine whether a vocational expert's testimony about the requirements of a particular job are consistent with the DOT.  *See* SSR 00-4p; *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).  The Ruling specifically provides:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p.  In this case, the ALJ received testimony from the VE, Dr. Fisher, regarding jobs available in the economy based on the RFC set forth by the ALJ in the hypothetical.  However, the ALJ did not ask Dr. Fisher whether his analysis was in conflict with the DOT, in violation of SSR 00-4p.  Therefore, the ALJ failed to comply with SSR 00-4p in this case.

16

As in *Prochaska*, the Commissioner responds by appearing to concede in her Defendant's Supplemental Response that the ALJ failed to comply with SSR 00-4p but by arguing that the error was harmless. *See Prochaska*, 454 F.3d at 735-36. The Commissioner asserts that there is no inconsistency between the DOT and the VE's testimony because all of the jobs identified in the DOT attachment to Payne's Opening Brief are sedentary and the VE testified at the hearing that all of the jobs identified for Payne are sedentary. Although correct that the limitation provided to the VE by the ALJ, the VE's testimony at the hearing, and the jobs in the DOT all address sedentary work, the Commissioner stops short of the true conflict–that, within the broad category of sedentary work, there is a requirement of a certain amount of standing or walking. This element of sedentary work is in direct conflict with Payne's RFC and the limitation in the hypothetical of work requiring no walking or standing but rather seated only. As in *Prochaska*, each of the five jobs, as defined by the DOT, requires specific physical capabilities (walking and/or standing) that are beyond Payne's limitations. *See* 454 F.3d at 736. Therefore, the Court cannot find as a matter of law that the ALJ's failure to comply with SSR 00-4p was harmless.

It may be, as suggested by the Commissioner, that the VE would have had an explanation regarding the standing and walking limitations as specifically related to the identified jobs in the region that would have resolved the apparent conflict between the requirements of the jobs and Payne's limitations. Notably, an ALJ may rely on a vocational expert's testimony that differs from the DOT. *See Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000). However, because the ALJ did not inquire into the conflicts, the Court cannot know what the VE would have stated. Because of the unresolved potential inconsistency between the VE's testimony, the DOT, and Payne's limitations, the Court cannot defer to the ALJ's decision, despite the Court's finding that it should be upheld on

all the other bases offered by Payne in his Opening Brief.  Accordingly, the Court finds that this case should be remanded to the ALJ solely for a determination of whether the job requirements identified by the vocational expert are, in fact, consistent with the definitions in the DOT and Payne's limitations.

Regarding Payne's second basis urging remand as to vocational expert testimony, the ALJ considered the letter of Mr. Young in his decision but found the testimony of Dr. Fisher more persuasive, as his opinion was more recent and was furnished in response to a more detailed hypothetical.  This evidentiary determination between competing vocational expert testimony was within the purview of the ALJ.  *See Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 541 (7th Cir. 1992) ("Furthermore, resolution of evidentiary conflicts lies within the exclusive domain of the ALJ, including the reconciliation of contradictory vocational expert testimony.").

Finally, turning to Payne's argument based on Social Security Ruling 96-9p, the Ruling provides:

> Standing and walking: The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday.  If an individual can stand or walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded.  Conversely, a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly.  For individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource.

SSR 96-9p.  Contrary to Payne's argument that the definitions of the jobs identified by the VE precluded him from working at any job, if a vocational expert identifies a significant number of remaining sedentary jobs when a claimant cannot perform the full range of sedentary jobs, the mere restriction to less than a full range of sedentary work does not mandate a disability finding as set

18

forth in Social Security Ruling 96-9p.  *See, e.g.*, SSR 96-9p; *Lauer v. Apfel*, 169 F.3d 489 (7th Cir.

1999).  As such, Payne's reliance on Social Security Ruling 96-9p by itself is not persuasive.

### 2.  Inability to Stoop and the ALJ's Hypothetical

In his fifth argument, Payne argues that the ALJ failed to consider the impact of Payne's

inability to stoop on his ability to work and, thus, postulated an incomplete hypothetical question to

the vocational expert.  Notably, Payne does not support this argument in his reply brief.

The ALJ sent Payne for a post-hearing examination by Dr. Kennedy, whose report was

submitted and received after the hearing at which the VE testified.  The report was not submitted to

the VE.  Dr. Kennedy's report indicated that Payne could not walk and stand in an 8-hour day.  Dr.

Kennedy also indicated that Payne should never climb, balance, stoop, crouch, kneel, or crawl.

Social Security Ruling 96-9p provides that "a complete inability to stoop would significantly

erode the unskilled occupational base and a finding that the individual is disabled would usually

apply . . . ."  SSR 96-9p.  Payne argues that the ALJ did not account for the restriction on stooping

in his decision despite having accepting and relied on Dr. Kennedy's report in his finding of a severe

impairment.  More specifically, Payne argues that the ALJ posed an incomplete hypothetical to the

VE because the hypothetical posed at the hearing, prior to Dr. Kennedy's examination and report,

did not include a reference to stooping and thus the ALJ erred by relying on the VE's testimony to

find that Payne could perform significant jobs in the economy.

However, the ALJ's RFC for Payne restricted him to seated positions, which, by definition,

do not include jobs that require stooping.  Moreover, the ALJ discussed the fact when discussing the

reasons why he did not list other postural limitations in Payne's functional capacity, although Payne

19

may have been confused because the ALJ used words 'completely sedentary job' rather than 'completely seated job.'  The ALJ wrote:

> I find the claimant retains the residual functional capacity to perform less than a full range of sedentary work.  That is, he cannot lift, push and pull more than 15 pounds at a time, and cannot stand or walk as a part of his job duties.  In addition, he can only work in a seated position, and cannot squat or climb.  This, I note, is consistent overall with the limitations reported by Dr. Hecht, and also extends the claimant considerable benefit of the doubt.  However, I did not impose Dr. Hecht's additional prohibition against kneeling, or Dr. Kennedy's ban against balancing, crouching and crawling, since a complete sedentary job wouldn't require these activities.

R. at 16.  The ALJ also noted that Payne could perform such functions on rare occasions if needed.  Finally, although the inability to stoop must be considered, the complete inability to stoop does not preclude performance of a significant number of sedentary jobs.  *Lauer*, 169 F.3d at 493.  The Court finds that the ALJ considered Dr. Kennedy's opinion and that his RFC contemplates all the limitations imposed by Dr. Kennedy given the restriction to seated work.  Accordingly, remand on this basis is denied.

## C.  Listing 1.02A

In this argument, Payne asserts that the ALJ erred in finding that Payne did not meet or equal a listed impairment in Appendix 1, Subpart P, Regulation No. 4.  As set forth above, if a claimant's impairments meet or medically equal any of the listed impairments in Appendix 1, the claimant is presumed disabled.  *See* 20 C.F.R. § 404.1420.  However, the claimant bears the burden of proving that his condition meets or equals the listed impairment.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).  In meeting this burden, the claimant must show that he satisfies all of the requirements of the listing.  *See Maggard*, 167 F.3d at 379-80 (citing *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993), *overruled on other grounds*,

*Johnson v. Apfel*, 189 F.3d 561, 563 (7th Cir. 1999); *Anderson v. Sullivan*, 925 F.2d 220, 223 (7th Cir. 1991)).

In his brief, Payne argues that he meets Listing 1.02A. This Listing requires that Payne demonstrate: (1) "a major dysfunction of a joint(s)" that is (2) "characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability)" and (3) "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)," and (4) "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)" with (5) involvement of a major weight bearing joint "resulting in an inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02.

The focus of Payne's argument in both his opening brief and his reply brief is the fifth requirement, that the joint dysfunction involve a major weight bearing joint "resulting in an inability to ambulate effectively, as defined in 1.00B2b." *Id.*[4] However, Payne must meet or medically equal all five of the requirements of Listing 1.02A in order to be considered disabled under the Listing. In his decision, the ALJ noted that Payne did not demonstrate any gross anatomical deformity as required by the second element of the Listing, such as subluxation, contracture, bony or fibrous ankylosis, or instability. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02A. The ALJ also noted Dr. Kalluri's statement of "no comments" when questioned about this element of the Listing. In his brief, Payne has not identified any evidence that would contradict the ALJ's finding and support such a gross anatomical deformity. Nor did Payne demonstrate the fourth requirement

---

[4] In his reply brief, Payne raises for the first time the argument that the ALJ could have obtained the testimony of a medical advisor regarding the question of equaling the impairment and did not. As Payne did not raise this argument in his opening brief, it is waived.

of the Listing–medical evidence of findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint.  Therefore, whether Payne is correct in his argument on the fifth element, he has failed to demonstrate that he meets all of the elements of Listing 1.02A so remand based on this Listing is denied.

### D.  Treating Physician

Payne next argues that the ALJ improperly rejected the report of attending physician Dr. Kalluri who found that Payne had a major dysfunction of a joint.  Notably, Payne does not provide a reply to the Commissioner's response to this argument.  Regardless, based on a review of the record, the Court finds that the ALJ did not improperly discount the opinion of Dr. Kalluri.

A treating physician's opinion is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(d)(2); *Boiles*, 395 F.3d at 426 (citing *Clifford*, 227 F.3d at 870); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).  "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances."  *Gudgel*, 345 F.3d at 470 (citing *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(d)(2)).  However, an ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability."  *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Dixon*, 270 F.3d at 1178; *Clifford*, 227 F.3d at 871) (quoting *Clifford*, 227 F.3d at 870) (internal quotation marks omitted).  The ALJ

must discuss, at some level, how the evidence of record contradicts the treating physician's diagnosis.  *See Gudgel*, 345 F.3d at 470.

In support of his argument that the ALJ did not give the proper weight to Dr. Kalluri's opinion, Payne notes two reports of Dr. Kalluri.  According to Payne, the first report provided an outline that the severity of Payne's impairment would equal Listing 1.02, and the second report stated that Payne was disabled.  In his decision, the ALJ noted that Dr. Kalluri did not provide a physical capacity assessment.

First, Dr. Kalluri did not state that Payne's condition equaled Listing 1.02 (discussed above) nor did Dr. Kalluri provide medical support for all of the required listing elements.  As noted by the ALJ, when Dr. Kalluri was asked on the form if Payne had a qualifying gross anatomical deformity, which is required by the Listing, he stated "no comments."  R. at 15 (citing R. at 213).  Moreover, as noted above, the medical evidence of record does not support a finding that Payne meets or medically equals Listing 1.02A.  *See Skarbek*, 390 F.3d at 503.

Second, the "disability" finding referred to by Payne was a checkmark by Dr. Kalluri on a form supporting Payne's request for a disabled parking placard.  The ALJ acknowledged the form but did not find it persuasive.  More importantly, it is the ALJ who is charged with determining the ultimate issue of disability, and, therefore, because it is void of reasoning, Dr. Kalluri's checkmark indicating disability is not helpful to the ALJ's ultimate decision.  *See* 20 C.F.R. § 404.1527(e).

Finally, the ALJ specifically explained that he gave less weight to the opinion of Dr. Kalluri and more to the opinion of Dr. Hecht given the number of times each treated Payne, the conditions under which each treated Payne, Dr. Hecht's history as a treating physician and a specialist in the

field of orthopedics, and the lack of a physical capacity assessment for Payne by Dr. Kallrui on the issue of "disability."  Accordingly, the Court finds that remand based on this argument must fail.


### E.  Credibility Determination

In his brief, Payne argues that the ALJ failed to meet the necessary legal standards when finding that Payne was not fully credible.  Notably, Payne does not provide a reply to the Commissioner's response to this argument.

Social Security regulations provide that, in making a disability determination, the Commissioner will consider a claimant's statements about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work.  20 C.F.R. § 404.1529(a).  However, subjective allegations of disabling symptoms alone cannot support a finding of disability.  *Id*.  The Social Security regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability:  (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms.  20 C.F.R. § 404.1529(a), (c); *see Pope*, 998 F.2d at 482, *overruled on other grounds*, *Johnson*, 189 F.3d at 563.

The ALJ must weigh the claimant's subjective complaints and the relevant objective medical evidence as well as any other evidence of the following factors:

(1)    The individual's daily activities;
(2)    Location, duration, frequency, and intensity of pain or other symptoms;
(3)    Precipitating and aggravating factors;
(4)    Type, dosage, effectiveness, and side effects of any medication;

24

     (5)     Treatment, other than medication, for relief of pain or other symptoms;

     (6)     Other measures taken to relieve pain or other symptoms;

     (7)     Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).  In making the credibility determination, Social Security Ruling 96-7p dictates that the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."  SSR 96-7p at *1.  The Ruling provides that the "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p; *see Steele v. Barnhart*, 290 F.3d 396, 942 (7th Cir. 2002); *Zurawski*, 245 F.3d at 887.

Moreover, an ALJ is not required to give full credit to every statement of pain or to find a disability every time a claimant states that he or she is unable to work.  *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996).  However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence.'"  SSR 96-7p at *6.

In his decision, the ALJ found that "although there is *some* basis for the claimant's pain complaints in the evidence, I do not believe it is quite as persistent or debilitating as he contends."  R. at 15.  Payne argues that the ALJ fails to define partial credibility and does not present a rationale for disbelieving Payne's testimony in light of the medical evidence he recites.

However, the ALJ's RFC finding, as noted above in Part B, is generally consistent with the conclusions of Payne's treating physician, Dr. Hecht, and the consultative physician, Dr. Kennedy. The ALJ also detailed how the objective medical evidence undermined Payne's claims of disability. R. at 15-16.  The ALJ noted that diagnostic tests were unremarkable, including MRIs and x-rays. The ALJ also noted that Payne's treating physician, Dr. Hecht, was puzzled by the lack of medical evidence to support Payne's complaints of extreme pain.  Dr. Hecht remarked that Payne's "pain seems to be out of proportion to what my operative findings were." R. at 135.  Dr. Hecht also stated that Payne's pain level seemed fairly low and that he should be functioning at a higher level than seated-only work.  Another physician, to whom Payne was referred by his treating physician, noted the possibility of malingering.  It was reasonable for the ALJ to consider this dearth of supporting clinical or diagnostic findings when giving Payne less than full credibility.  *See Powers*, 207 F.3d at 435-36 ("The discrepancy between the degree of pain attested to by the witness and suggested by the medical evidence is probative that the witness may be exaggerating [his] condition.  For the hearing officer to rely on this as evidence of a lack of complete candor cannot be deemed patently wrong.").

The ALJ also noted in his decision that Payne's course of treatment failed to support his contentions of disability.  As detailed by the ALJ, Payne saw Dr. Kalluri only twice until he obtained the forms he needed for Medicaid and then he did not return until he needed disability forms completed.  Notably, although the ALJ found that Payne was not fully credible, the ALJ nevertheless only found Payne not credible to the extent that he could not perform more than a limited range of sedentary work, which constitutes a significant limitation.  This limitation is consistent with the ALJ crediting Payne's testimony to a degree.

26

Therefore, the Court finds that the ALJ adequately weighed Payne's subjective complaints of pain, the objective medical evidence, the medical opinions of record, the minimal clinical and diagnostic findings, and the conservative treatment and that the ALJ considered the factors set forth in 20 C.F.R. § 404.1529. The ALJ considered the entire case record and articulated specific reasons for his credibility finding. Finally, the ALJ was in the best position to make the credibility determination because he observed Payne during the hearing. Payne has not demonstrated nor does the Court find that the ALJ's credibility determination is "patently wrong;" therefore, the Court will not reverse the credibility determination. *See Jens*, 347 F.3d at 213.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ failed to comply with the requirements of Social Security Ruling 00-4p. Therefore, the Court **GRANTS** the Plaintiff's Opening Brief [DE 19] on this limited basis. The decision of the ALJ is **REVERSED** and **REMANDED** to the ALJ solely for a determination of whether the job requirements identified by the vocational expert are consistent with the definitions in the DOT and Payne's limitations at Step 5 of the sequential analysis.

SO ORDERED this 4th day of December, 2006.


s/ Paul R. Cherry_____
MAGISTRATE JUDGE CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record